The United States Court of Appeals for the Ninth Circuit is now in session. Good morning and welcome to the James Browning Courthouse here in San Francisco. We're delighted to have you here. This is the time set for the case of United States of America v. Keith Atherton. If counsel is ready to proceed, you may please come forward. Thank you, Your Honor. May it please the Court. My name is Elizabeth Daly. I'm here on behalf of the appellant, Keith Atherton. The Supreme Court in Garza v. Idaho recognized that no appeal waiver serves as an absolute bar because at least some appellate claims are unwaivable. In fact, every circuit but one recognizes that there is an exception to generally worded appeal waivers for certain fundamental errors. As I understand it, the government isn't seeking to eliminate that exception here. They don't dispute its validity or its existence. Can I ask a question? When you say they're unwaivable, they are waivable. If it were expressly in the waiver agreement, it could be waived or even then we would not give any effect to that if they were written into it. This Court hasn't reached the question of whether certain claims are unwaivable, and I don't think you need to today. The Supreme Court in Garza also did not reach that question. What they were talking about as far as the unanimous circuit agreement was the types of claims where the appeal waiver is not knowingly and voluntarily entered and Rule 11 violations government breach. But what every circuit but one also recognizes is that there is an exception for fundamental error, and I think the scope of that doctrine is what this Court is calling on. Where in Garza does the Supreme Court suggest that that might be the exception? I didn't see anything about fundamental error in Garza or in the Garza footnote. They noted in a footnote that there is circuit recognition of this. Of miscarriage of justice. I mean, this looks like just clear error review, that you're raising essentially things that would be factual mistakes reviewed for clear error. How is this rise to the level of miscarriage of justice? Well, I think that the standard in every other circuit encompasses more than what you're, I think, referring to in miscarriage of justice and includes what the circuits would call significant and constitutional error. That's a First Circuit quote. And so I think when you're saying miscarriage of justice, the concurrence of the circuits, I believe, include constitutional error of the sort raised here. Are you making the same argument with respect to waivers as they apply to trial and waivers as they apply to sentencing, or is sentencing different? No, Your Honor, sentencing is different. We didn't make that distinction, but that's the distinction you're asking for. One hundred percent. That is the reason that circuits have treated appeal waivers for sentencing error very different. And they generally articulated three rationales, and it's a consistent rationale for why sentencing waivers are different. One is the risk to the integrity of the court, because it would undermine public confidence in the judicial system to leave an unconstitutional sentence in place and to require a defendant to serve more time in prison than the law allows. And there's also the fact that appeal waivers— Well, but counsel, if we adopted that rule, then everything is an exception, basically, to the appellate waiver. Because you're—I mean, then the appellate waiver almost has no effect, because you guys are very good as defense counsel at creating arguments for why the district court erred. And under that theory, as long as you can put it into a due process claim, it's a constitutional error, and then what are we doing? I mean, why are we even having appellate waivers? When the courts have discussed the reasons for caution in this area, they've said that it warrants procedural safeguards. And that's why we think that the court should reaffirm the Wells rule, because it does not prohibit the waiver of constitutional error. What it does is it creates a presumption that the parties did not intend to insulate an unconstitutional sentence from review unless they said so explicitly. So, Ms. Daley, if the—so they could waive this right? Under Wells, the right to this sort of due process violation, any due process violation could be waived, even if it's manifest injustice? Your Honor, I think that's an interesting question that's not presented here today. Well, I think it's the next case, isn't it? Because the government is going to start putting this in all of its plea agreements. It's going to be bargained for. And so then we're going to start seeing due process questions that have been expressly waived, and under Wells would be effective to waive appeal. And then we're going to be right back to asking this question. Is this an important enough or fundamental enough right that we should view the plea agreement as somehow illegal? And the way that's played out in other circuits that have the miscarriage of justice is that no claims are off the table, and in every case they have to reach the merits because they don't say that it has to be constitutional. They don't say that it has to be an illegal sentence. They provide essentially no standard, other than it has to be more than routine error. Then what does the appellate waiver do? Because, I mean, you waive the appeal. The whole idea is to give judicial efficiency, and then all these cases are still coming up to us anyway. I think we're talking about a very small number of cases, and I think the statistics in that will bear me out. But the reason why it's a small number of cases is because the vast majority of defendants who plead guilty do so for finality purposes, and they don't choose to go forward. In my cases with plea agreements, I don't recall a single defendant appealing. I generally get them from the panel. You said there were three reasons for treating sentencing differently. I think you gave us one so far. The integrity of the courts, the unequal bargaining power has been consistently recognized, where prosecutors hold all the cards, and as a matter of contract law, that risks unfairness. But that would go to the conviction as well. So why is sentencing different? Well, if there are disputes about the conviction itself, those can be hashed out at trial. But if there isn't a trial, and, for example, we've had cases in which the law changes afterwards, and we nonetheless say there's a waiver, you can't change it. Go ahead. I think that goes to the third concern, which is knowing involuntary. And so in good all, this court, I think, explained it well in saying that the result of a guilty plea is known as respect to the trial waiver because you know that the result is the imposition of a judgment of conviction for the offense you admitted to. But in the sentencing context, there's a much broader range of uncertainty, the error, the result, the magnitude. And so you have this universe of possibilities, and the courts task in each individual case with knowing, did the defendant voluntarily waive that? It's not really voluntary. I mean, voluntary doesn't seem to me to capture it because, you know, there's no coercion or anything. But knowingly is the problem, which goes back to Brady in terms of you have to know the circumstances. I think that's correct. And the Second Circuit in La Jeunesse and the Fifth Circuit in Layal both articulated that rationale in stating that it's a question of whether the parties truly anticipated the risk of that error and intended it to be within the scope. It's interesting that the waiver here was knowing involuntary. What I'm talking about is the procedural safeguards, and you're correct. There is no contention here that this waiver was knowing involuntary, but it was entered under the backdrop of this Circuit's precedent indicating that illegal sentences are accepted from a generic appeal waiver. Isn't that what this turns on as our interpretation of illegal sentences? Because Wells, I mean, Wells has language that both the majority and the dissent below in the three-judge panel pulled apart to say, well, this is what illegal sentences mean. Is that what we should be deciding? I mean, should we go back to Wells and say, look, we're just going to go back to the baseline of Wells and we're going to be more specific about what Wells meant? Is that how we should approach this case? Two sort of answers. The first answer being yes, but the question is, what is an illegal sentence? And the second part being, you've already said it, and there is 30 years of precedent from this Court saying illegal sentence has a precise legal meaning, which is a sentence above the statutory maximum as well as a sentence that violates the Constitution, and this Court has never limited that to substantive constitutional error. Well, maybe we should. What if we limited it to substantive constitutional error? I just got to – it would be really helpful if we had a limiting principle here. I'm interested in what you said about how not many cases would come up, because that's not my defense. I think we would be an outlier. I have a follow-up question to this that I've been wondering about. There's been some argument that there should be like a distinction between a substantive challenge and a procedural challenge, and I'm just curious if we – can you hear me now? If we were to allow procedural challenges, wouldn't there always be some room for saying that, yes, it was procedural error, but it was harmless? Your Honor, carving off procedural error, yes, that is correct. So why, what's the point of carving off, making a distinction between procedural versus substantive? There isn't one, and there isn't in any other circuit. So we would be an outlier if that was a distinction that we were creating. The other circuits have considered the miscarriage of justice standards to include both substantive and procedural constitutional error as well as nonconstitutional error. So they've looked at, for example, Sixth Amendment denials at sentencing. They've looked at a Prendy error at sentencing, ex post facto as constitutional claims that are procedural, and apply regardless of an appeal waiver. And they've also, in Lajeunesse, looked at denial of the right to allocution and concluded that that was a miscarriage of justice. Do you advocate limiting the Wells rule to constitutional violations? I believe that the Wells rule should be an illegal sentence, which is one that's above the statutory maximum or in violation of the Constitution. But not necessarily a violation of, say, the guideline system or any other statutory issue. I think that that is what the rule is, and we're requesting a reform of the rule. And what's the reason for that limitation? The reason for that limitation is, as Judge Nelson was indicating, that it creates a boundary so that it's not any routine garden variety error. This is routine garden variety error. I mean, this is just the judge got the facts wrong at sentencing, and that's garden variety factual error reviewed for clear error. How this becomes a constitutional claim, and if this is a constitutional claim, the doors are wide open. The waiver's meaningless if this counts as constitutional. Your Honor, this was deemed a non-meritorious claim, so we did not raise constitutional error in this case. We weren't successful in raising it. And that's what the court needs to look at. You did raise constitutional error. Yes. You lost, but that's a different question. Yes, this was a non-frivolous claim of constitutional error. Your view is every factual error could be recast as a due process violation, and so every clear error review now escapes the waiver. It swallows the whole rule. Your Honor, I understand that point. Going back to Judge Nelson's question, there are other limitations that we have a very small number of appeals that are really at issue here, because the attorney has to agree that there is a colorable claim of constitutional error, and they have to discuss with the defendant the very real risks if their claim is deemed in breach of the plea, then they have consequences. And so we're not talking about flooding. Wait, wait, wait. What consequences are there? They lose. If there's a breach of the plea, then that plea is invalidated and the government isn't deemed to be bound by the promises. Can you play that out for me? I just don't have any history in this, but I've never seen a case. It doesn't mean that one doesn't exist where an appellate waiver – I mean, we reject appellate waivers or we enforce appellate waivers all the time. That doesn't mean that they're in violation. There's usually a provision in the plea agreement that says, and it's up to the government to invoke it, that it says – And have they ever done that? Have you ever seen a case where they've invoked that for challenging something that was ultimately found to be within the appellate waiver? No, Your Honor, I haven't, but it is something that I generally advise my clients before going forward with an appeal that you need to consider this. And so it's my assessment as to whether the claim is colorable and then that additional warning that maybe you shouldn't go forward with this because you have a lot to lose. And that goes to whether there's a bargain for consideration. And in fact, if the – I mean, in this instance, for example, we could have simply avoided the question of the waiver and decided maybe in a memorandum disposition that there was just no due process violation and that would have been the end of it. In other words, it's not like this is a heavy lift in terms of low-level, non-meritorious cases. That's correct, Your Honor, and I think why Weld is clear and narrow as compared to the other circuits is that it allows the court to summarily dismiss claims that don't fall within its standard. And every other circuit that applies the miscarriage of justice, that standard is not right-specific. It's not claim-specific. It goes, in each individual case, fact-specifically, and the court has to reach the merits to decide whether there's been a miscarriage of justice. And so, for example— Ms. Daley, may I ask you to go back to Judge Johnstone's question because I'm not totally sure I understood your answer. If all the facts of this case were the same and the claim you're making were the same but the agreement had said, you know, waive the right to appeal on any grounds, including a due process error at sentencing, what would the result be? I think the answer is it depends. I know the court doesn't like to hear that answer, but I think the reason it depends is that the court— the reason we have this express rule is so that on review the court can decide, was this intended by the parties to exclude this type of error? And so I think you need to look at it on the record and in the language of the agreement, and I think Pollard is the best example of how this works because in Pollard it was related to restitution and forfeiture, and the defendant specifically waived an Eighth Amendment claim as to the imposition of restitution and forfeiture. In the example I gave, wouldn't it be— the example was, you know, on any grounds, including a due process error at sentencing. You think it's—I don't understand why it's difficult to answer the question. Would that agreement specifically contemplate this type of claim? I think it would be more clear if it said the parties agree that if there is a due process error at sentencing related to materially false information being considered by the courts, that is within the appellate waiver. Where did that exception come from? It was in Wells, but that's the first time I ever saw it. Where does that exception come from? The illegal sentence exception? No, the exception—the notion that you can— it doesn't apply if you are more specific in the agreement. It is a limiting factor in Wells. It's in Wells, but where did it come from, and why doesn't it, as Judge Molera is suggesting, really amount to spinach in terms of how it would operate? I think it goes back to—and other circuits have articulated it as, what did the parties anticipate? And did they anticipate that if this particular error and result occurred, then that was intended to be waived? Well, if that's the case, it would have to be extremely specific. It would have to be some kind of dispute that they knew was going to arise. For example, a dispute about whether X person is going to be allowed to have her testimony come in without appearing. If so, we waive any contention that so-and-so has to actually appear at the sentencing. That would be one thing. But if it's at the level of due process, about 90% of these issues in one way or another are due process issues. And the reasons that you give for not having— for treating sentencing specially would apply to that kind of generality. I think that's something more than I waive my rights to a constitutionally imposed— to appeal an unconstitutionally imposed sentence. And that was my concern with Judge Molera's example. Well, it seems that it has to be responsive to the concern that you can't anticipate what's going to happen at sentencing before it does. So if you can anticipate it because you know something's going to happen and you put it in, that's one thing. That's correct. But if it's at a level where you really don't know what's going to happen and you're not anticipating anything in particular, I don't see how the exception comports with the reasons for having the doctrine to begin with. Well, I think at that level, number one, we're not anticipating that there will be errors of that magnitude, that a constitution is the floor. And when the parties are entering the agreement, that's correct, they're not anticipating that the court's going to make up facts to justify the sentence, that the court's going to base its sentence based on pure allegation with nothing to show that it's reliable, which is the due process standard. Similarly, nobody expects that, you know, an attorney won't show up for sentencing and the court will continue to proceed without the attorney. The circuit said it was okay. Some circuits have said that's okay, and some circuits have said, no, that's not okay, because that standard is very amorphous. I think it's much more moldable and it's much easier to bring a garden variety error in under that amorphous miscarriage of justice standard than it is when you know that a constitutional violation is the floor and the parties did not intend that to be part of a general appeal waiver. Well, once we take the premise, which I don't want to put words in your mouth, but I think you conceded that with the right wording, a person could waive this or the parties could agree to waive this, then the question is just did the parties, both of whom are represented by counsel, understand that the language that they in fact adopted did waive this, and even if you think that on its own any aspect of the conviction on any grounds isn't enough, if we were to hold that that would be enough, then everybody would know that that was the rule, and if you say any appeal on any grounds, that that covers anything. What is the problem with that? What is the problem? I mean, what value is served by saying that you have to say something more specific than any aspect of the conviction and sentence on any grounds? I think what we're looking for is something that's right-specific and ideally fact- or context-specific. I think that it raises significant concerns if the government can, as a matter of course, add whatever language into an appeal waiver and with their superior bargaining power, require it as a take-it-or-leave-it condition that every defendant attach the Bill of Rights and waive each of those rights. But, Mr. Daley, if we take that out and have a safety valve that is unenforceable, we're actually taking a bargaining chip away from the defendant in terms of what's at the table. Right now, if they are able to negotiate over the conditions of the sentence, and this may be a blanket waiver or maybe there's an implied term, but right now the defendant is empowered to stand on their rights and seek, okay, well, I want an exception for, I don't want this to apply to any due process pieces. If we say that there's a safety valve so that that's never enforceable, and I still don't think you've answered kind of what is or what isn't enforceable, but all we've done is disempower the defendant from having a chip to play in the bargaining process. They can't anymore offer the prosecutor, yeah, you know, if the judge says something off in sentencing, I'm okay with that as long as you're going to suggest 10, not 15, right? I think all that's required is that the agreement make it clear that the parties intended to, that they anticipated a specific constitutional error and that they intended that there be no appeal. But I guess the problem with that is the waiver here. I think two of the three involves the two Wells factors that we've already said are illegal sentences, except for the waiver that you've raised. So why can't we read this to accept, to be in contemplation of, well, this deals with exceeds the statutory maximum, express. It deals with outside the guidelines, express. They just decided not to put something procedural about the sentencing in there. So it was bargained for. I'm unclear. Are you asking me does the appeal waiver in this case specifically waive constitutional rights? Right. Like if we were just to approach this as a contract, there are indications here that you've got this catch-all waiver, and then they've specifically called out the two other things that we look for in Wells for an illegal sentence. So why wouldn't we think that it was in contemplation already of any procedural defects with the sentencing? Well, I think that's a matter of contract interpretation in this instance. And when you look at the appeal waiver in this case versus the ones in Wells, Torres, Watson, they're virtually identical. They all carve off something, and then they say, and I waive my right to appeal on any other ground. And so that's the background. But also the concern about how specific it needs to be goes back to those three concerns. And when you're talking about having a broad appeal waiver that leaves any outcome at sentencing open, then you have potentially a take-it-or-leave-it condition. Your description of the bargaining was not my experience. Well, the outcome isn't really the issue in the sense that there's an exception for an illegal outcome. And other than that, it seems fair to read the waiver as not applying to outcomes. But what it does apply to is some level of seriousness, let's say, of procedural error. I don't know how we articulate that. But, for example, if there was a case about sentencing somebody in absentia, that's a due process violation. It's also a rule violation. But the notion that somebody was agreeing to be sentenced in absentia seems a little far-fetched. But do you have to put in whether you meant to waive the right not to be sentenced in absentia? Or which way does it run? It would have to show that the defendant entered that agreement with their eyes open, that they knew that this was a possibility and that both parties intended that. And when you have a situation where the prosecutors have all the cards, because in the federal system, charges control sentences. And so often there isn't another option other than to take these conditions, take it or leave it. And the question of whether there's been bargain for consideration for that specific appeal waiver, I think, is one of the reasons why this court looks to a narrowing doctrine in all of the circuits. I guess why aren't defendants better off with a safety valve release of something like unconscionability, manifest injustice that's non-waivable, something that courts will always imply in. Your argument here is pushing for some sort of ability under the Wells rule can be given away at the stroke of a pen in the next plea agreement. Why don't you argue for a manifest injustice if you really want to get at things that are not and cannot be contemplated by a waiver? So it's outside of the contract framework of Wells. I wondered if that was a good position to take, because reading the circuit case law from other circuits, it's much broader. But I think that if we're talking about bargaining, it's much clearer under the Wells rule, because you know when you're entering the plea what you're waiving and what you're not waiving, and you know what your consequences are. Isn't the position that we should just reaffirm Wells? Yes, Your Honor. But there's a dispute as to what Wells means. I mean, that's why we're here, as to whether the constitutional error is in the sentence itself, the terms of the sentence as Wells said, or the process of getting there, here an alleged factual error. So how is Wells going to – I don't see how Wells answers the problem, because if it did, I don't think we'd all be sitting here having an en banc argument about it. Well, the en banc is about the Atherton opinion. The Wells, I think, is the rule that stays in existence today, and it's the rule that's been applied to plea waivers. Is it a rule that it has to be an unconstitutional sentence, or that it can be an unconstitutional process of getting to the sentence? Before the Atherton opinion, there was never a distinction between procedural and substantive constitutional error. That was raised by the government for the first time in this case, and I don't think the court should adopt it. In fact, there are a number of cases before Wells in which procedural error was considered to be. Correct, and I think a fair reading, just as the panel in this case, the majority in this case, decided is that Wells includes procedural constitutional error, and that's consistent with the other circuits. Do you want to serve as a balancer? Thank you, Your Honor. May it please the Court, Suzanne Miles for the United States. The Wells rule that concentrates on the type of error is asking the wrong question. What the other circuits ask, and what I think this court needs to set its rule in, is not about the type of error that potentially occurred at sentencing when determining whether there is a carve-out to an otherwise valid appellate waiver. It needs to be asking about the severity of the error, and that's really what the other circuits have done in adopting a miscarriage of justice standard. Well, they've used words like miscarriage of justice, but they seem to apply it to circumstances similar to those contemplated by Wells. Miscarriage of justice is... Except for the Eighth Circuit, which says that if you don't have a lawyer, that's okay, you waive that, which is a – what would your position be about that? The other circuits have narrowly defined miscarriage of justice. I disagree with Ms. Daly that they have adopted a broad and amorphous rule. A miscarriage of justice is an error that seriously, seriously affects the fairness, the integrity, and the public reputation of the judicial system. In the words of the Second Circuit, it is an error that has an overriding impact on the public interest. In the Fourth Circuit's words... So what about a trial and abstention? A trial and... A sentencing procedure and abstention, I'm sorry. I think it would depend on the circumstances of whether – if the waiver was knowing or not knowing. I know there's a circuit split on whether or not that would constitute manifest injustice. We would have to look at it. There are certainly a class of claims that the court would have to look at under this standard. In which ones wouldn't we have to look at? What you wouldn't have to look at are the garden variety claims. So define that for me. Maybe you think it's garden variety or all of us think it's garden variety, but they claim that it's not a garden variety. Wouldn't we still have to look at it? I don't think so, Your Honor. Not in every single case. So the point of setting a high bar in terms of the severity of the error sets a standard that the defendant has to reach. And this is very similar to... At some point you're looking at the actual merits of the claim to assess whether... Take, for example, the claim here, which is the argument that the judge based sentencing on facts for which there was no evidence or which there was false evidence. There's a version of that claim in which there was absolutely no evidence or completely fabricated evidence before the court, which, in my mind, would be severe miscarriage of justice. And then there's a variation of that claim which maybe could be arguably run of the mill where when you actually dig into the record, you know what, actually there is plenty of evidence there and the allegation that it was false is, in fact, unfounded. So you've already conceded that you don't think we should just say that this type of claim could never be not within the scope of the appeal waiver. So then you're inviting us to actually look at the strength of the claim to determine whether the waiver applies. How is that actually different, then, from what the panel did here? Or what's the... I mean, it seems largely semantic to me to say look at the merits of the claim to determine whether the waiver applies versus determine that the constitutional... the waiver doesn't apply to a constitutional claim but deny it on the merits. I don't think it's semantic at all, Your Honor, and I think your example exactly illustrates the balance that we want to try to reach. You're right. You can call due process. The scope of due process is not monolithic. To call a constitutional right monolithic is inherently a mistake, which is why we're in this situation now. You can call a mistake of fact, like the one here, the availability of sex offender treatment in Eugene, Oregon, 15 years from now, a due process violation. You can also see that a judge coming out and telling a defendant, I am sentencing you to 30 years instead of 10 because you're black and not white. That's also a due process violation. One of those is incredibly severe, and it undermines the public trust in the system. The other one is not, and it doesn't, which is why a question about assessing the severity and the nature of the claim is what this court should adopt so that what we're not doing is closing the door to serious due process violations that may pop up. Counsel, I'm sorry to interrupt. Your Honor, I'm sorry. I interrupted you. I'm interrupting you, but you said determining what's serious. In this case, it appears that the defendant said that he was sentenced because the judge relied on false information, I believe. That's one of the claims. If he had been sentenced under false information, it would have affected the sentence, correct? I'm not sure I understand the question. Would it have affected his sentence? It depends on how the judge articulated whether or not that she was relying on that information. Right. So we would have to look to see how serious it is. I'm not saying that that's not true. This idea about being able to disentangle the merits of the claim from the appellate waiver is simply a false hope. You can't. If the question is that the appellate waiver, I'm sorry, that this read-in exception to the appellate waiver is going to apply in order to catch the most serious constitutional, most serious public interest violation.  For example, the whole notion that due process in sentencing includes material untrue reliance, or reliance on material untrue statements. Trace this back to Townsend v. Burke in 1948. The criminal defendant was sentenced on the basis of assumptions concerning this criminal record, which were materially untrue. Where does that fit in your scheme, and how do we know? That's a Saperstein-type error, but Saperstein-type errors like this due process error also come in a variety of severity. A Tucker-type claim, which warranted, undermined the public trust because there was a severe error, and I think it's akin to the Townsend error, where there was a manifest, demonstrated mistake about a fact that was material to the actual sentence with something that would seem to be important enough that it undermines the public trust. Then where we are is in every instance we're looking at the merits in one guise or another of a due process claim based on falsity. That's inescapable, Your Honor. So you agree that's inescapable? I think it's inescapable, which is why, Your Honor, if I may, it's important to set a high threshold and demand that the defendant make a threshold showing before the case goes to a merits panel. Was it higher than the merits decision? In other words, there are instances in which, in fact, the person would prevail on the merits if they haven't waived this material falsity, but because of the waiver they're not? Is there a category of reliance on material falsity, which is bad enough to be a due process violation but not bad enough to undermine the waiver? I'm not sure I fully understand the question, Your Honor. Can I ask you just to repeat that one more time? Is there a category of judicial reliance on material falsity in sentencing, which would be a due process violation but wouldn't undermine the waiver? If it rises to the level of a manifest injustice. And let me step back for a minute. But if you're saying that, because it looks like several other circuits have adopted the manifest injustice or miscarriage of justice exception, that does not list, as we do, the specific instances in which an otherwise valid appeal waiver will not be enforced. And they provide a list of factors that courts must consider in determining whether or not a sentencing error is serious enough, which is what you're telling us you think we would need to do, that the waiver should not be enforced. So should we just go along with these other several circuits that follow this manifest? Is that what you're advocating for? I am, yes. I'm asking you to come in line with the majority of the sister circuits, the only one being the Fifth Circuit that has a much more draconian view of the appellate waivers. Hold on. If we adopt the manifest injustice, which maybe we should do, but aren't the defense counsel going to just argue that this is manifest injustice? It's manifestly unjust to rely on false facts. No, Your Honor, because those words don't have, they don't lack meaning, nor do they lack experience. You use this standard. I want to go back to Judge Berzon's question, because I still, I don't think I understood the answer. Because it seemed to be that you were saying that false information at sentencing would rise to the level of a miscarriage of justice if it made a difference to the sentence. That just means that it's prejudicial error, and therefore every error, every claim of error, factual error, that is meritorious is a miscarriage of justice and comes in. So if you're saying that that's not true, then there must be some cases in which a prejudicial error, a sentence is wrong, materially wrong, and we let it go because of the waiver anyway. It's not a miscarriage of justice. How do we draw that line in response to Judge Berzon's question? Right. Yes, there are, this is a line drawing exercise, absolutely. There are going to be errors that don't rise. Can you give us an example of one of those errors that affects the sentence that isn't a miscarriage of justice? Yes, well, this is an example where we had what the defendant conceived to be an error. There's a number of cases. Yes, but we decided it wasn't. We decided it was not an error. That's the whole point. Yes. So can you give me an example where a court said, oh, yes, they relied on, the judge said that you had 10 prior convictions, so he gave you the statutory maximum when you only had one prior conviction, but we're going to let that go? Yes, Your Honor. There are a number of cases that this court has looked at post-Wells where it is essentially said that the claim that's being brought, even though it's being brought under a due process guide. That would have got to prejudicial error. Not necessarily prejudicial, Your Honor, but the difference between substantive reasonableness and actual, I'm sorry, and something that seriously affects. Well, you're saying that it's not, if you're saying it's substantively reasonable, and you're just, that's another way of saying it's not unreasonable, which is another way of saying it's not prejudicial. So it's just words. I think what we need, Your Honor, I'm sorry. It's all just sentences that you're talking about, really. I think what we need to come back to are first principles. These are contracts. Plea agreements are contracts. The Supreme Court has said that over and over again. Appellate waivers, so long. They can't be enforced as contracts. I mean, well, theoretically they could, but I was looking for a judge who'd said that, and I can't tell that any judge has said that they're just going to be interpreted. I don't even think that's your position, that they should just be straight-up contract interpretation. No, but for the most part, what this court has said again and again, including in Wells, is that we generally follow contract law. I guess I'm puzzled why the government then is making an argument for a rule that it can't contract around. The Wells argument, your friend for the defendant, is making an argument rooted in contract. Maybe there's something that they can't contract around, but if under the panel opinion as I understand it, the government can just put the term in the next contract and be done with it. No more issue. Your Honor, I am making a contract law argument because there's a public policy, a public policy doctrine in contract law that is a perfect corollary to the manifest injustice exception that we're talking about here. And basically, if I may, what the courts have said over and over again is a defendant is empowered to waive those rights that are personal to him. But how are you waiving rights? The problem here, of course, is that unlike the waiver of the trial, you have no idea what's going to happen in sentencing. So it seems to me, and I don't think Navarro is necessarily a precedent that's relevant here, and I'll say why in a minute, but this is all against a background of a waiver about something that hasn't happened yet, you don't know about, and you don't know what you're waiving. So one would think you would have to be very forgiving, even on a contract theory, with regard to holding somebody to that kind of waiver when constitutional rights are at stake. I think the Supreme Court's decision in Ruiz just doesn't bear that argument out. Anticipatory waivers are accepted, even if you don't know the full context. But there you were waiving a whole proceeding as you do with a trial. So it's not going to happen. So you're not going to have many things happen that you don't know about. But here it did happen, or it does happen. And if the judge decides that you can't have a lawyer at sentencing, as happened in the Nace-Circa case, is that something you're supposed to know that you waived in advance, that that was going to happen? Of course not. What Ruiz demands is that a knowing waiver is one where you might not know the exact outcome, but you do know the general context. This is a question of outcomes. This is a question of procedures and a question of whether constitutional rights are being violated. Counsel, you have, seeming to me, already started from the get-go conceding that there is some exception for constitutional violations in illegal sentences, sentences above a statutory maximum. What I still haven't heard, I think now several judges have asked this question, if there is a version of the claim here reliant on false information for sentencing that is prejudicial and could be so prejudicial that it results in what we'll call manifest injustice or miscarriage of justice, and then there's maybe a version of that claim that does not, which I think is your position. How do we draw the line between the version for which the waiver is effective and the version for which the waiver is not effective, and how do we actually make that assessment? What do you envision happening when an offendant comes on appeal and says, the judge in sentencing relied, my claim is that they violated my right to due process because they relied on false information when they sentenced me. How are we supposed to sort out the ones for which the waiver is, type of waiver in this case, catch-all waiver is effective and not? I think that the mechanics go like this. The defendant raises his, files his brief, right, even though he has an appellate waiver. The government moves to dismiss based on that appellate waiver, and then it's incumbent upon the defendant to make a showing, a substantial showing, akin to Pena Rodriguez, akin to how this court works in certificates of appealability on habeas, akin to the kind of threshold showing that's required in Armstrong to show prosecutorial discretion, to meet some kind of threshold to make an actual showing based on his claim of the mistake and the record of sentencing, that there was an actual mistake upon which that was material, that the court demonstrably relied, those are the requirements under Saperstein's due process, and that rose to the level of one that affected the public trust and the public integrity of the judicial system. And how does this court draw that line? It can rely on the kinds of factors that have been articulated in the First Circuit and adopted by all the other circuits, looking at the clarity of the error, the gravity of the error, the character of it, whether it was factual versus legal. Those are informative. And then it's also going to go to the case law. Remember, again, that miscarriage of justice is not a new phrase. This court relies on it in its plain error standard. It relies on it in many other contexts. But in the plain error context, we've generally said that the third and fourth factors are met if the error actually resulted in more prison time. So, again, this all seems a long way of saying that basically any meritorious claim is going to meet the standard. And that's where I think it's useful to look at the contract corollary of this public policy right. And basically, again, to get back to what I was saying, what the court has held over and over again, this court and the Supreme Court, is that there are certain types of rights. Due process rights include a bundle of rights. The Constitution includes a bundle of rights. There are some errors, there are some rights that the defendant holds as his own, and he can waive them. He can forfeit them, in which case this court reviews that for plain error. But there are certain things that are so severe, so extreme, that he can't bargain them away. The Eighth Amendment is torture. Give me an actual example of a prejudicial error that resulted in more prison time that you would say is not a miscarriage of justice and the waiver would be enforced. If it's not a miscarriage of justice, you'd like me to give you a hypothetical? I think we could take the hypothetical of, for example, the Tucker type error, where a defendant had five prior convictions, but instead of a Gideon error, where he had no counsel at all, he simply says, well, I had ineffective assistance of counsel in some of those prior convictions. And there's a question about whether or not those prior convictions could be subject to post-Tahabia relief, although he had never sought it. So there's a question as to the veracity or the reliability of those prior convictions, and still that was relied on at sentencing. They're shakier than they otherwise would have been, unlike in Tucker, where they were simply not valid at all. And so he was treated as a recidivist when he shouldn't have been. I think that is a difference of degree. What about the claim here? I mean, the panel found this claim not to be meritorious, but suppose that he was right that Judge Aiken was mistaken about the availability of sex offender treatment and that he would have gotten 24 months less. But for that, which side of the line would that claim fall on? I think if Judge Aiken had said flatly, I don't think that there is sex offender treatment that can make you safe in our community. If there was, I would release you after 15 years. But because I don't think that in 15 years we're going to have sex offender treatment that's going to adequately meet your needs, I am going to sentence you to 30 instead. I think we would have a much harder case in that perspective. Both on the merits and with regard to the waiver. Yes. But I thought that was the claim he was, essentially is the claim he was making. But this is a big problem with the rule that we have coming out of Atherton and coming out of Wells, is that all that the defendant needs to do is make a claim and not a showing. And that's a difference. So if you were able to go back and look at the record and say, what is it that Judge Aiken actually did? Did she rely on this? Was it material? Was it a misstatement of fact? And did she rely on it? And a simple read of the record shows that she didn't. That case would have been removed. I'm sorry to interrupt you, but it sounds like even the process that you laid out, the court would have to do essentially the same thing it did now in this case. So I'm wrestling. I'm sympathetic. I understand you would like defendants to waive anything, kind of lessen your burden. But I'm just, this is tricky and challenging, and especially from what I'm hearing, in terms of judicial economy, it doesn't offer any less burden here for the court. We would still have to look and see whether or not, under what you outlined here, whether it was a substantial showing and that it mattered and was relied on. So can you help me with that?  It's not judicial economy, though, that is the concern. The concern is whether the government is getting the benefit of its bargain in a plea agreement. And here, the government is not getting it. We have to still brief the merits of all of these cases. You're just saying you're going to, excuse me. Anyway, my question was the same as Chief Judge Marghia's. What's the benefit to the government? You're saying it's a false hope or a false dream that you don't have to look at the merits. You're just briefing them on all these cases on the merits. Really what you're doing is just moving it to an earlier stage, which the same exact procedure and process would have to take place. You're just moving it to the motion to dismiss stage. Your Honor, I disagree that it's simply taking the cancel. Excuse me, counsel, but you just laid out a whole process where the appellate makes his, puts his appellate brief, and then the government would make a motion to dismiss, and then the appellate would have to put forth something else, and then apparently you would probably have to respond to that showing on the merits. Isn't that the exact same thing? No, Your Honor, not from the government's perspective. Because for the government, filing a motion to dismiss is not responding on the merits. It is asserting our appellate waiver. Why is this a motion to dismiss on any theory? Because we've held that it's not jurisdictional, the waiver. So whatever it is, it's not subject to a motion to dismiss. It's subject to a motion for summary affirmance, maybe, but not to dismiss. Then maybe it's a summary affirmance. Right, and you can do that on any, on the Wells approach. In this case, you could have done that. You could have filed a motion for summary affirmance because there's nothing on the merits here, and then you can say it either way, and therefore the waiver doesn't apply, or the waiver does apply, but it doesn't apply, but he loses on the merits. Either way, you can do it. If you have a frivolous or non-colorable claim, you're not going to be burdened with it. The standard under Wells, the test under Wells that was enforced in Atherton, is just that the defendant has to state a constitutional claim, not a meritorious constitutional claim. He has to say that this is a due process claim. We saw that play out in Atherton. So would your problems be solved if we said first you have to show that it's a non-colorable claim, and then if it is, there's no waiver? Or even first you have to show that you win on the merits, and if you win on the merits, then there's no waiver. Would that solve your problem? I think that's what the miscarriage of justice essentially gets at, but it does get at a higher standard. Is there any difference in the real world between those two? There is an absolutely real difference in the world between those two things. If I can't explain, I'm happy to do that. I want to ask you something else. Do you think there are any claims that a defendant cannot waive? I think that those that go to the public interest, the public integrity of the judicial system. This is a very narrow class of claims. If the answer is yes, there are claims they cannot waive, then there are claims they can waive. And I think the line-drawing problem here is if they can waive it, and it's a matter of interpretation, and they have, they've waived it. The argument you're making about colorable manifest injustice doesn't seem to matter. Your Honor, if I may, I think it does, because what I'm talking about is this tiny class of claims that are answering your question, those that can't be waived, those that go to the public trust in the system, making sure that people are not sentenced entirely on racism. It's a small class of claims that the other services have articulated. There's no type of claim that should be excised. So I'm not sure how that's consistent with what you opened with, which is that we should not focus on the type of claim but the severity of the claim. Because racist sentencing is the most severe form of a due process. Yes, but you said a little while ago. That's right. You said a little while ago that if in fact this particular claim had been meritorious and prejudicial, if Judge Aiken had said that there were no, had specifically based her sentence on the fact that there were no rehabilitation facilities, and in fact there were, you said that would be a problem and we'd have to look at the merits. So at that point, the line's wrong. It seems not to be worth the tangle anymore. It is worth looking at the types of cases that are an analogy to this. For example, in Pena-Rodriguez, where the rule is we do not impeach jurors, except if a defendant can make a showing of an overt racist statement by a juror and can show that the verdict was based on it. If they can make an actual showing of those things as a threshold showing, then we cut through the otherwise complete rule against jury impeachment. What's your response? This is the type of threshold showing I'm asking for. What's your response to counsel's argument that in judging the scope of the waiver and its knowing involuntary character, we have to take into account that Wells was in the background on the books and informs the construction of that. What's your response to that? I think that there are a certain number of plea agreement contracts that were made when Wells was in play that were informed by the Wells rule. I'm asking this court to overturn the Wells rule. Will that invalidate this plea? I don't think it will invalidate this plea. I think it will invalidate the pleas coming forward. After this court invalidates Wells. If Wells was on the books when this plea was entered and the defendant perhaps was advised by counsel, well, here's Wells, and so don't worry about this waiver. Which is why I don't think it invalidates this plea. I think Mr. Atherton entered this plea with Wells being the controlling rule, and so I think he entered a plea with a very broad exception to the otherwise strict appellate waiver. If we invalidate that exception, why would that not then invalidate the knowing nature of the waiver because it was made on a mistake of law? Perhaps we're talking past each other. I think that Mr. Atherton still gets the benefit of Wells. I think it's the cases after this that don't. Oh, so you don't think the rule we would enunciate would even apply to this case? I don't think. I think that he made his contract when Wells was the controlling law. So you're bound by Wells for purposes of this case? I think we're bound by Wells for purposes of this case. Why don't we wait for a case that actually shows manifest injustice, which I don't think anyone is claiming here, whichever step we do the analysis at. But as we are now, what we have, I know that the statement has been that we can file a motion to dismiss in any case. Under the current rule, all the defendant has to do is say due process, in which case we get past the motion to dismiss phase or the motion for summary affirmance phase. There is no requirement for a threshold showing, and we have to file on the merits. Excuse me, but we don't. But you're going to have to file on the merits. On your construct, you're going to have to file on the merits anyway, either at the front end or the back end. Well, you said that whether there's a manifest injustice depends on the particular circumstances and whether it's a big due process violation or a little due process violation. Your Honor, should be clear. Actually, more than that said, you couldn't come up with an example in which there was a due process violation, but the waiver still holds. So it seems like the two pieces collapse onto each other and you're always going to have to discuss the merits. I disagree, Your Honor. It should be clear from the phase of the sentencing whether this meets the manifest injustice standard. Is this one of the most unusual types of mistakes? What is the type of constitutional error that is actually prejudicial, as Judge Collins said, actually results, for example, in more prison time that you think the appellate waiver catch-all would be effective against? Can you give me a specific example of something that actually violates the Constitution and causes prejudice to the defendant but you would say has been waived? Yes. I think that there is any number of factual mistakes that would qualify as a Saperstein-type due process violation that the court could look and say that I think that you, for example, in this case, I believe that you raped this child more times than you actually videotaped. At the same time, that's not necessarily making... Your conduct is so egregious as it is that even if you had raped this child more times than what you recorded, I am still sentencing you to as much time as I possibly can. But then you're making the error non-prejudicial, right? What if the judge had actually said, if you only raped the child two times, I would sentence you to 10 years, but since I believe you raped the child more times, I'm sentencing you to 30 years? Your Honor, I have to admit that I think that if what the judge says is based on a factual error, a clear factual mistake, I am sentencing you to more time than I otherwise would sentence you to, that case should go to a merits panel. And that should be reviewed. And the appellate waiver catch-all here would not waive that claim? I think if the defendant makes that threshold showing and you can see that based on the face of the sentencing record, then yes, you should send that to a merits panel and the government should brief it. And the waiver is worthless because every claim that's meritorious is not waived and every claim that is not meritorious is... I just... But, Your Honor, right now, we have no way of filtering out the unmeritorious from the meritorious that doesn't demand... You've completely collapsed them because you've conceded that any meritorious claim would not be waived and only the non-meritorious are waived, so it's just all the merits. Your Honor, I just don't agree. I think that this... But you've been asked three times to give an example of a prejudicial error that rises to a due process violation, materially affects the sentence, but would still be waived, and you haven't identified one. You've conceded that the ones that exist do go to a merits panel. Your Honor, I'm over my time, but there is one point that I would like to make. Even if that is true, even if it is true that the meritorious claims should go to a merits panel, there is, I would say, 90% to 95% of the cases that are unmeritorious and can't be sustained on a claim record. What are her summary affirmance on the merits? Because right now, all the defendant needs to do is say that it's a due process claim, and then the government has to brief it. If the defendant says it's a due process claim and then needs to show that due process claim, that due process error, on the plain record of the sentencing before the government then needs to come in in the handful, the tip of the iceberg cases that would require review on the merits, then the government has gotten the benefit of its burden in these appellate waivers in 90% to 95% of the cases. And that is a significant... First of all, it's in line with all the other circuits. It's in line with this circuit's treatment of plea agreements in general, and it's in line with the benefit of the bargain that the government is getting by entering these plea agreements to begin with. And that's what we're asking this Court to do, is to set a high bar that requires a threshold showing that this is a severe enough error that it merits all of the parties doing the work and bringing it to the Court for review. I agree with what you just said there, but that seems very inconsistent with prior... Ms. Miles, I know you're well over time. If I could ask one last question, because I want to make sure I understand. So you're advocating for what you just said, but I'm trying to figure out what that would mean in terms of an opinion. So are you saying Bibler plus a catch-all miscarriage of justice exception, or are you just saying miscarriage of justice exception? Just miscarriage of justice. So Bibler, which says you can't have an unconstitutional sentence, you're not advocating for that? No. And Bibler didn't raise that question to begin with, so that rule popped up in Bibler out of Rule 35 and then has been carried forward in this regard in a way that just doesn't make sense in these cases. Thank you. No struggle. I think these are difficult questions in trying to find an answer. I think that's why we're here, but thank you very much. Appreciate your argument. Thank you. The Wells Rule allows defendants to bargain so that they are agreeing not to appeal a constitutional right. And that's what makes it different from the way these types of exceptions have played out in other circuits. And that's why the rule that we have,    that's been on the books for approximately 30 years, is clear and narrow and should be affirmed. Ms. Daley, the defendant here could have, if it were a meritorious claim in the end, the defendant could have waived it by saying due process with respect to reliance on incorrect factual information. I agree. Do you actually agree with that? And if you agree with that, then how does the underlying problem of not being able to project forward into the future of something that you don't know about play out? It seems to me, as I said before, that there may be very specific circumstances in which there are anticipated disputes about sentencing that could be waived. But at any level of generality with respect to something that isn't anticipated, why are you accepting the exception and how does that not undermine the entire enterprise here? Well, I think that there's a difference between deciding that an issue is reviewable regardless of an appeal waiver versus what Wells says, which is tell the court how to interpret an appeals waiver. And what we're talking about is how to interpret an appeals waiver. And Wells tells us that when you waive a constitutional error, then you can do so as long as it's expressed. But that exception came from nowhere. I mean, that's why I asked you the question before. Wells said it, but it's not anywhere else. And it seems inconsistent with the basic enterprise here. It was a basic understanding of what we're doing. I don't believe it came out of nowhere. I believe it came out of the doctrines that the circuits have consistently articulated. So, for example, the Second Circuit said, we will certainly often be willing to set aside the waiver when constitutional rights are concerned. And the Fifth Circuit in Lyell said, we're going to believe that the parties anticipated that the sentence would be constitutional and didn't intend to create an exception. That's all true. And that's why I'm questioning why you're agreeing that that all changes if you're saying, but we're waiving due process issues with regard to the findings of facts. It changes how you interpret the appeal waiver. Why? Whether there are certain claims that are unwaivable is a different question. Because of the contract principles of formation and intent. The public defender's brief, Mika's brief here, takes the position that that should not be true. Is that right? They do, yes. But the constitutional sentencing error is never subject to waiver. And I don't think the court needs to reach that question when you're just, the vast majority of cases that are going to come to you are going to come to you with an interpretation question, not is this unwaivable. And that avoids reaching the merits if you're looking at what did the parties here contract for. So, I want to ask you the same question. So, what is, are you saying Bibler, we should still keep Bibler? I, yes. And Wells? Yes. And not look at the others, what the other circuits, the majority of the other circuits are doing regarding miscarriage of justice factors? I believe, well, this court has said that an illegal sentence is a miscarriage of justice. It's a defined type, and Wells says that we won't interpret an appeal waiver to include an illegal sentence unless the parties have contracted for that. That's part of the voluntary and knowing, the intent of the contract, as opposed to what the government was focusing on, which is the public interest. So, in other words, could the parties contract for an actually illegal sentence that is a specifically, substantively illegal sentence, i.e. a sentence of more than the statutory maximum? I think it's possible. I could envision, for example, in the wake, you know, in the lead up to Apprendi or Booker, the parties saying, hey, we know this issue is before the Supreme Court. We're agreeing that the defendant in this case should be sentenced to 12 years. Post Booker, it might be that the court could go down to 10. But that's different. That's not a sentence about the statutory maximum. It's still a procedural question. How are you going to decide? Well, it would be about the statutory maximum if the guidelines were below that and the guidelines were treated as mandatory. So in Apprendi era, that's a statutory maximum claim. And so I can see if the parties, or for example, if the parties agreed to an above statutory maximum sentence to set aside state charges that they knew were pending, that could be a situation where the court knows that that was what the parties intended and the result doesn't. But isn't it beyond judicial competence or the position, judicial authority to sentence somebody illegally? And is it also, in some circumstances, beyond judicial authority to use unconstitutional procedures, i.e. you can't have a lawyer at sentencing? Suppose he says, you can't have a lawyer at sentencing. Can he waive that? Can he put it in his plea agreement? I'm not going to challenge the denial of a lawyer at sentencing. And it would be enforceable? Constitutional error is, I mean, I think constitutional means serious. It's a shorthand for this. This is a serious error. This is a severe error. Whether you can ever contract against that, I don't think any circuit has decided. And I don't think this court has to be the first. Certainly, in Crespin v. Ryan, we indicated that we had concerns about that there is some boundary. But I don't think this case raises that boundary. But what is your question? I mean, your answer to the question of whether there are claims that the defendant cannot waive. Are there any claims that the defendant cannot waive, no matter how we interpret the appeal? What this court should do versus what the courts have said so far. So far, they said that you can't waive claims that relate to the knowing and voluntariness of the appeal. So those are the types of claims that you can't waive. But what is your answer? Are you saying that if it's above the statutory maximum, you can waive that? I think if the court were presented with it, then a substantive constitutional error would likely be something that the defendant can't waive. That is not the question presented here. Thank you very much. I would like to appreciate your argument presentation today, acknowledge and appreciate both you and Ms. Miles for stating. Thank you very much. The case of the United States of America versus Keith Atherton is now submitted. And we are adjourned. Thank you. All rise.
judges: MURGUIA, WARDLAW, BERZON, NELSON, MILLER, BADE, COLLINS, FORREST, SUNG, JOHNSTONE, ALBA